# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-722


**RUSSELL J. GUIDRY**

**VERSUS**

**INTERNATIONAL MAINTENANCE
COMPANY, LLC**


**\*\*\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3,
PARISH OF CALCASIEU, NO. 02-4720,
SAM LOWERY, WORKERS' COMPENSATION JUDGE


**\*\*\*\*\*\*\*\*\*\*\*\***


## MICHAEL G. SULLIVAN
## JUDGE


**\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Michael G. Sullivan, Judges.


**AFFIRMED.**

Kevin L. Camel
Cox, Cox, Filo & Camel
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
Counsel for Plaintiff/Appellant:
Russell J. Guidry

James J. Hautot Jr.
Judice & Adley
926 Coolidge Boulevard
Lafayette, Louisiana 70505
(337) 235-2405
Counsel for Defendant/Appellee:
    International Maintenance Company, LLC

SULLIVAN, Judge.

Russell Guidry appeals the workers' compensation judge's (WCJ) determination that he failed to prove an injury in the course and scope of his employment. For the following reasons, we affirm.

## Discussion of the Record

Mr. Guidry alleges that he sustained a corneal ulcer and subsequent transplant as a result of a rust particle becoming embedded in his right eye in the early morning hours of May 8, 2002, as he was "breaking down" rusty bolts while working the night shift for International Maintenance Company (IMC). Mr. Guidry completed that shift, but did not report for his next one, and he was subsequently laid off. He returned to the job site later that week to request his final paycheck, but he did not remember if he reported the accident at that time. Other employees who saw him then testified that he appeared to be drunk and that his eye was swollen, but that he did not report a work-related injury.

Mr. Guidry first sought medical treatment at 10:55 a.m. on May 11, 2002, at Moss Regional Medical Center in Lake Charles, Louisiana, where he reported that something got in his right eye three days earlier, while he was wearing safety glasses. He was diagnosed with a corneal ulcer and transferred to LSU Medical Center in Shreveport, Louisiana. The emergency room report at Moss Regional states that Mr. Guidry "confirms about 7 beers since midnight."

Mr. Guidry remained at LSU Medical Center from May 12, 2002, until his discharge on June 4, 2002. His discharge summary states that he received medication for acute major eye infections, with a principal diagnosis of "corneal ulcer, unspecified" and a secondary diagnosis of "alcohol abuse continuous use." Dr. Christopher Shelby, who examined Mr. Guidry upon his admission, stated that

his right-eye symptoms included elevated eye pressure; an extensive epithelial infiltrate, which occurs when normal membrane cells begin sloughing off; and a 20% hypopyon, or an accumulation of pus, in the anterior chamber of the eye. According to Dr. Shelby, the most common cause of a corneal ulcer is infection, but it can also be caused by a Vitamin A deficiency secondary to alcoholism.[1] Dr. Shelby was unable to obtain a bacterial or fungal culture to determine the source of this infection, and he did not locate a foreign body in the eye. Dr. Wally Nawas, who treated Mr. Guidry during his hospitalization, believed the infection was fungal in nature because Mr. Guidry started to improve after being given antifungal medication. Dr. Nawas had difficulty stating that the ulcer was caused by a foreign body, especially a piece of rust, because he would have expected to see a "rust ring" where the particle had become embedded in the cornea and because he believed the pain would have been so intense that Mr. Guidry would have sought immediate medical attention.

At Defendant's request, Dr. William Hart examined Mr. Guidry approximately one year later, after he had undergone a corneal transplant. Dr. Hart also believed that Mr. Guidry would have sought medical attention on the day of his accident, as the average person who had a foreign body that was causing a corneal ulcer would be in excruciating pain. According to Dr. Hart, even a benign invasion of the cornea would be uncomfortable at the outset. Because of the delay in seeking treatment, Dr. Hart thought it only a small possibility that an accident as described by Mr. Guidry was the originating injury. Dr. Hart also explained how alcoholics, especially those who also smoked, were known to have similar eye problems.

---

[1]The social history section of the discharge report indicates that Mr. Guidry reported consuming a 12-pack of beer per day and two packs of cigarettes per day.

At trial, Mr. Guidry testified that he was wearing safety glasses and a hard hat when something got into his eye. (In his deposition, he testified that he was breaking off rusty bolts from a cone when this happened.) He testified that he told his co-worker, Craig McMichael, that something was in his eye, but that he did not go to the eyewash station to cleanse it. He acknowledged that, when he returned to the job site later in the week to inquire about his paycheck, he might not have told his supervisor, Taurel McMichael, about the injury. Rather, he believed that his daughter, Tonya Lavan, reported it later, when she actually picked up the check.

Craig McMichael testified that he remembered working that shift with Mr. Guidry, but that they were "bolting up" with cleaned and treated bolts that would not have been rusty at that time. He also testified that he did not remember Mr. Guidry telling him about an eye injury. Two other co-workers also testified that the crew was "bolting up" with new bolts rather than "breaking down" with rusty ones. Mr. Guidry's supervisor, Taurel McMichael, testified he first heard about the alleged accident the following week, when he was asked to investigate whether anyone on the crew knew of the incident. He stated that Mr. Guidry returned to the plant on two occasions, with his eye obviously swollen the second time, but did not report a work-related injury.

At the close of evidence, the WCJ stated that Mr. Guidry "did not come close to carrying his burden of proof," noting Mr. Guidry's inarticulate and confusing testimony as to how the accident allegedly occurred and the lack of corroboration from his co-workers and from the medical opinions.

## Opinion

In *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted) (alteration in original), the supreme court set forth the standard of review in workers' compensation cases as follows:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

To recover workers' compensation benefits, a claimant must establish a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). The claimant's burden of proof is by a preponderance of the evidence, even if the accident is unwitnessed. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992). In *Bruno*, 593 So.2d at 361, the supreme court set forth the following criteria for cases in which proof of the accident is supported by the claimant's testimony alone:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

In the present case, we find no error in the WCJ's decision that Mr. Guidry failed in meeting this burden of proof. Mr. Guidry admitted that he may not have reported a work-related eye injury, even though he returned to the job site on two

4

occasions after it allegedly occurred. His co-workers testified that they were performing a different activity from that described by Mr. Guidry in his deposition. They also stated at trial, and in statements dated a week after the alleged accident, that they had no knowledge of Mr. Guidry sustaining an eye injury.

In addition to this lack of corroboration as to the facts surrounding the alleged accident, the medical testimony is inconclusive as to the cause of the corneal ulcer. The WCJ relied on Dr. Hart's opinion that there was only a small possibility that a the accident as described by Mr. Guidry was the originating injury, given the lack of evidence of a foreign body or a "rust ring" and the delay in seeking treatment from such a painful injury. Dr. Nawas expressed a similar opinion, finding it difficult to associate this injury with a foreign body, especially a rust particle. Also at issue is Mr. Guidry's excessive alcohol consumption noted in the medical records of both hospitals, given statements by all three doctors about the effects of alcoholism on the structure of the eye. Finding the WCJ's conclusions well-supported by the record, we hereby affirm the judgment dismissing Mr. Guidry's claim.

**Decree**

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Plaintiff-Appelle, Russell Guidry.

**AFFIRMED.**

5